Patrick Q. Hustead, Esq. (#4420)
Dane C. Mueller, Esq. (#66602866)
The Hustead Law Firm, *A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO  80237
Ph. 303-721-5000
Fax 303-721-5001
Email: pqh@thlf.com; dcm@thlf.com
*Attorneys for Plaintiff Employers Mutual Casualty Company*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, an Iowa corporation,<br><br>**Plaintiff,**<br><br>v.<br><br>MK WEEDEN CONSTRUCTION, INC., a Montana corporation; MK EQUIPMENT CO., LLC, a Montana limited liability company; WEEDEN CONSTRUCTION, LLC, a Montana limited liability company; MONTE K. WEEDEN, individually; and JULIE A. WEEDEN, individually;<br><br>**Defendants.** | **COMPLAINT AND JURY DEMAND**<br>Cause No. CV-24-112-BLG-TJC |

Plaintiff, Employers Mutual Casualty Company ("Plaintiff," "EMCC," or "Surety"), by and through its undersigned counsel, The Hustead Law Firm, *A Professional Corporation*, submits its Complaint and Jury Demand against the Defendants, MK Weeden Construction, Inc. ("MK Weeden"); MK Equipment Co., LLC ("MK Equipment"); Weeden Construction, LLC ("Weeden Construction"); Monte K. Weeden ("Mr. Weeden"); and Julie A. Weeden ("Ms. Weeden") (collectively, the "Defendants" or "Indemnitors"), jointly and severally.

1

I.    **THE PARTIES**

1.    EMCC is an Iowa corporation with its principal place of business located at 717 Mulberry Street, Des Moines, Iowa 50309.

2.    MK Weeden is a Montana corporation and indemnitor of EMCC that, at all times alleged herein, conducted business in the State of Montana with its principal place of business at Highway 87 West, Lewistown, Montana 59457. After a diligent search of publicly available information, upon information and belief, the sole member of MK Weeden is Monte K. Weeden, an individual who upon information and belief resides at 383 Whitetail Drive, Lewistown, Montana 59457 and who has expressed an intent to remain in Montana indefinitely, upon information and belief.

3.    MK Equipment is a Montana limited liability company with its mailing address located at PO Box 1164, Lewistown, MT 59457.[1] MK Equipment is an Indemnitor of EMCC that at all relevant times conducted business in the State of Montana. After a diligent search of publicly available information, upon information and belief, the sole member of MK Equipment is Monte K. Weeden, an individual who upon information and belief resides at 383 Whitetail Drive, Lewistown, Montana 59457 and who has expressed an intent to remain in Montana indefinitely, upon information and belief.

4.    Weeden Construction is a Montana limited liability company with its mailing address located at PO Box 1164, Lewistown, MT 59457.[2] Weeden Construction is an Indemnitor of EMCC that at all relevant times conducted business in the State of Montana. After a diligent search of publicly available information, upon information and belief, the sole member of Weeden

---

[1] MK Equipment does not have a principal place of business or principal address listed with the Montana Secretary of State other than the mailing address identified above.
[2] Weeden Construction does not have a principal place of business or principal address listed with the Montana Secretary of State other than the mailing address identified above.

Construction is Monte K. Weeden, an individual who upon information and belief resides at 383 Whitetail Drive, Lewistown, Montana 59457 and who has expressed an intent to remain in Montana indefinitely, upon information and belief.

5.  Mr. Weeden is an individual and Indemnitor of EMCC whose last known residence is 383 Whitetail Drive, Lewistown, Montana 59457 and who has expressed an intent to remain in Montana indefinitely, upon information and belief.

6.  Ms. Weeden is an individual and Indemnitor of EMCC whose last known residence is 383 Whitetail Drive, Lewistown, Montana 59457 and who has expressed an intent to remain in Montana indefinitely, upon information and belief.

## II.    JURISDICTION AND VENUE

7.  EMCC hereby incorporates by reference all the allegations contained above as though set forth herein.

8.  This Court has personal jurisdiction over Defendants because Defendants entered into an indemnity agreement with EMCC for EMCC to extend surety credit to MK Weeden so MK Weeden could complete construction projects in Montana. Pursuant to the indemnity agreement, Defendants promised to post collateral with EMCC as set forth in the contract and to reimburse EMCC for, among other things, any losses, expenses, payments, attorneys' fees, costs incurred by EMCC in the event EMCC incurs losses as a result of issuing surety bonds on behalf of MK Weeden. As such, the Defendants purposefully availed themselves of the benefits and privileges of conducting business in Montana.

9.  This Court has original subject matter jurisdiction over EMCC's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of EMCC's claims against Defendants exceeds $75,000 (EMCC seeks reimbursement of losses in the amount of at least $2,679,690.11), and

EMCC is a citizen of a different state (Iowa) than each of the Defendants (Montana).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to EMCC's claim occurred in or around the U.S. District Court for the District of Montana, Billings Division.

### III.     GENERAL ALLEGATIONS

11.     EMCC hereby incorporates by reference all the allegations contained above as though set forth herein.

**A.     The Subcontract and the Bonds**

12.     MK Weeden entered into a contract with the Montana Department of Transportation ("MDOT") to perform work at the Federal-Aid Project No(s). STPP 32-1(19)17 (the "MDOT Project").

13.     On or about May 25, 2021, EMCC, as Surety, provided contract bond No. S406609 (the "MDOT Bond") in the penal sum of $13,440,740.82 on behalf of MK Weeden, as principal, to guarantee MK Weeden's work at the MDOT Project. A copy of the MDOT Bond is attached as **Exhibit 1** and incorporated by reference herein.

14.     MK Weeden also entered into a contract with the State of Wyoming Department of Environmental Quality, Abandoned Mine Land Division ("State of Wyoming") to perform work at the AML Project 16G-II, Phase 13 project (the "Wyoming Project").

15.     On or about February 11, 2022, EMCC, as Surety, provided performance and payment bonds No. S406621 (the "Wyoming Bonds") (collectively with the MDOT Bond, the "Bonds"), in the penal sum of $3,792,908.40 on behalf of Weeden Construction, as principal, to guarantee Weeden Construction's work at the Wyoming Project. Copies of the Wyoming Bonds are attached as **Exhibit 2** and incorporated by reference herein.

4

16. As set forth in the Bonds, EMCC agreed to guarantee the obligations of the respective principal, MK Weeden, on the Bonds.

17. In addition to the Bonds, EMCC provided at least eight (8) other performance and payment bonds on behalf of MK Weeden, as principal, to guarantee MK Weeden's work on various projects.

18. MK Weeden has failed to pay its premiums for these eight (8) other performance and payment bonds in the amount of at least $20,541.55.

**B.    The Indemnity Agreement**

19. As consideration for EMCC issuing the Bonds and other consideration, on or about November 16, 2020, the Defendants executed a General Application and Agreement of Indemnity (hereinafter referred to as "GAI") in favor of EMCC. A copy of the GAI is attached as **Exhibit 3** and incorporated by reference herein.

20. The GAI provides, in pertinent parts:

The Undersigned shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including but not limited to interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal or the Undersigned to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned as soon as liability exists or is asserted against the Surely whether or not the Surety, shall have made any payment therefor …

To facilitate the carrying out of all provisions of this Agreement and to secure the obligations in any and all paragraphs of this Agreement and the payment and all other performance of all the Undersigned(s), present and future debts, obligations and liabilities to Surety, of whatever nature ("Obligations"), the Undersigned assign transfer and set over to Surety and grant Surety a security interest in all the Undersigned(s) equipment, fixtures, accounts, contract rights, chattel paper, instruments, documents, general intangibles and inventory, whether now owned or hereafter acquired and all additions and accessions to, and all proceeds and products of, any of the foregoing ("Collateral"): and (a) all the rights of Principal in growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) all the rights, title and interest of the Principal in and to all machinery, equipment, plant, tools and materials which

are now or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) all the rights, title, and interest of Principal in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) all actions, causes of action, claims, and demands whatsoever which Principal may have or acquire against any subcontractor, laborer, or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts, whether bonded or not, in which Principal has an interest; (f) all rights the Undersigned have in patents, patented processes, licenses, copyrights, trademarks, and all other intellectual property rights required for the performance of the work for which the Surety issued Bonds, and expressly authorizes the Surety to use these property rights as required in the Surety's discretion to complete the work for which the Surety issued Bonds …

The Undersigned covenant and agree that all payments received for or on account of contract(s) which are bonded by the Surety shall be held as trust funds in which the Surety has an interest. To secure said interest, it is agreed that all monies paid to the Principal and/or Undersigned covered by the Bond(s) are trust funds for the benefit of and the payment for direct labor, materials, and services furnished in the prosecution of the work specified in the contract(s) for which the Surety may be or become liable under any of said Bond(s). The trust funds are specifically reserved as set forth above, and any breach of said duty shall be deemed a breach of the duties or obligations of the Undersigned under this Agreement or Indemnity.

21. In sum, pursuant to the GAI, the Defendants agreed, among other things, to indemnify and hold EMCC harmless from any and all liability for losses, costs, damages, attorneys' fees, and expenses of whatever kind that EMCC may sustain or incur by reason contracts referenced in the Bonds. The Defendants also granted EMCC a security interest in all equipment, fixtures, accounts, contract rights, chattel paper, instruments, documents, general intangibles and inventory sufficient to cover any and all actual and potential liability that EMCC might incur as a result of claims on the Bonds. Additionally, the Defendants agreed to hold all payments received for bonded contracts, including the Project, as trust funds in which the Surety has an interest. The Defendants have these obligations at common law as well.

**C.     The Claims**

22.     On or around June 15, 2021, MK Weeden executed a subcontract agreement (the "Subcontract") with Northern Improvement Company ("NIC"), wherein NIC agreed to provide certain labor, materials, and equipment at the Project.

23.     On May 9, 2024, NIC filed its Complaint against Defendants MK Weeden and EMCC, wherein NIC alleged that MK Weeden failed to pay NIC "in full within the time requirements set forth in the Subcontract after completion of its contributions to the Project." NIC also alleged that "[a]s a result of Weeden's failure to pay NIC under the Subcontract, [EMCC] is obligated under the terms of the Bond and Mont. Code Ann. § 18-2-204 to pay NIC for the labor, materials, and equipment NIC provided to the Project. NIC's allegations against MK Weeden and EMCC total, at least, $2,325,106.65, plus interest, costs, disbursements, and attorneys' fees. A copy of NIC's complaint is attached as **Exhibit 4** and incorporated by reference herein.

24.     To date, EMCC remains exposed to losses under the MDOT Bond for NIC's claim in excess of $2,325,106.65.

25.     In addition, EMCC received claims on the MDOT Bond from Western Emulsions, Inc. ("Western"), Highmark Traffic Services, Inc. ("Highmark"), and Reeverts Fencing, LLC ("Reeverts").

26.     EMCC, after investigating Western's claim on the Bonds, negotiated a settlement and release agreement with Western, whereby EMCC agreed to pay Western $158,986.44 for a release of its claim against the MDOT Bond.

27.     EMCC, after investigating Highmark's claim on the Bonds, negotiated a settlement and release agreement with Highmark, whereby EMCC agreed to pay Highmark $92,585.00 for a release of its claim against the MDOT Bond.

28. EMCC, after investigating Reeverts' claim on the Bonds, negotiated a settlement and release agreement with Reeverts, whereby EMCC agreed to pay Reeverts $11,188.60 for a release of its claim against the MDOT Bond.

29. EMCC also received a claim on the Wyoming Bonds from NAPA Auto Parts ("NAPA") on the Wyoming Bonds and negotiated a settlement and release agreement with NAPA, whereby EMCC agreed to pay NAPA $36,960.44 for a release of its claim against the Wyoming Bonds.

30. In addition to the foregoing claims on the Bonds, the Surety has, through August 22, 2024, incurred losses of at least $34,321.43 in attorney fees, costs, and expenses relating to claims on the Bonds.[3] The Surety's losses are ongoing and will be supplemented as additional losses are incurred.

31. Additionally, MK Weeden has failed to pay its premiums on numerous bonds issued by EMCC in the amount of, at least, $20,541.55.

32. Accordingly, given the claims on the Bonds, EMCC's attorney fees, costs, and expenses, and MK Weeden's failure to pay its bond premiums, EMCC is exposed to at least $2,679,690.11 in liability as a result of issuing the Bonds.

33. EMCC has concerns about the Defendants' ability to fulfill their contractual and legal duties to EMCC as described further below.

**D.     EMCC's Demands for Indemnity and Collateral**

34. On April 12, 2023, EMCC notified MK Weeden that NIC had made a claim on the Bonds and advised MK Weeden that Defendants are responsible for the repayment of any loss or

---

[3] The amounts attorney fees, costs, and expenses continue to be incurred and are exclusive of recoverable interest.

costs as a result of NIC's claim. A copy of the April 12, 2023, correspondence is attached as **Exhibit 5** and incorporated by reference herein.

35. On May 15, 2024, EMCC provided Defendants with formal notice and demand regarding their joint and several duties to defend and indemnify EMCC from and against all losses related to NIC's lawsuit. A copy of the May 15, 2024, demand letter is attached as **Exhibit 6** and incorporated by reference herein.

36. In pertinent part, the indemnity demand letter provides:

EMC hereby demands, pursuant to the General Application and Agreement of Indemnity, ("GAI"), executed on November 16, 2020, and prior still applicable executed GAIs, that MK Weeden Construction, Inc. and its individual indemnitors, exonerate, indemnify, and keep indemnified EMC from and against all liability for losses and/or expenses which EMC may sustain or incur as a result of the above captioned suit.

37. EMCC also sent a second formal notice and demand to Defendants regarding their joint and several duties to defend and indemnify EMCC for and against all losses related to NIC's lawsuit.

38. On July 26, 2024, another formal notice and demand was made on behalf of EMCC to Defendants regarding their joint and several duties to defend and indemnify EMCC for and against all losses related to claims on the Bonds. EMCC also demanded immediate access to Defendants' books, records, and accounts including, but not limited to, the status of work under contracts being performed by MK Weeden, the condition of the performance of such contracts, credit reports, and payments of accounts. A copy of the July 26, 2024, demand letter is attached as **Exhibit 7** and incorporated by reference herein.

39. The Defendants' refusal to exonerate and indemnify EMCC has exacerbated EMCC's concerns about the Defendants' willingness and ability to indemnify EMCC as required by the GIA and prevailing law.

9

40. As of August 22, 2024, EMCC's losses and liabilities under the Bonds amount to at least $2,679,690.11 exclusive of additional consultant costs, attorneys' fees and costs, and pre and post judgment interest.

## FIRST CLAIM FOR RELIEF
### (Breach of Express Contract Against All Defendants)

41. EMCC hereby incorporates by reference all the allegations contained above as though fully set forth herein.

42. The Defendants entered into a valid and enforceable contract, the GAI, with EMCC.

43. Sufficient consideration supports the GAI.

44. EMCC substantially performed its obligations, if any, under the GAI, including but not limited to investigating and paying proper claims under the Bonds.

45. The Defendants failed to meet their obligations under the GAI, including but not limited to failing to exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses, failing to hold payment received on account of bonded contracts as trust funds, and failing to post sufficient collateral with the Surety, which failures constitute a material breach.

46. The Defendants' breach of the GAI has damaged EMCC, and the Defendants are jointly and severally liable to EMCC for all losses and expenses incurred by EMCC as a result of the issuance of the Bonds, including, but not limited to, bond payments, attorneys' fees, consultant fees, expenses, and costs, all as provided by the terms of the GAI.

## SECOND CLAIM FOR RELIEF
### (Common Law Indemnification Against MK Weeden)

47. EMCC hereby incorporates by reference all the allegations contained above as though fully set forth herein.

48. MK Weeden, as the principal under the Bonds, is required to indemnify and hold EMCC harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney and consultant fees, imposed upon, sustained or incurred by EMCC on account of the issuance of the Bonds.

49. EMCC has made demand upon MK Weeden to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the issuance of the Bonds.

50. MK Weeden has failed to meet its obligations to EMCC under Montana law.

51. MK Weeden's failure to meet its obligations to EMCC under Montana law has damaged EMCC, and EMCC is entitled to damages.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment Against All Defendants)

52. EMCC incorporates by reference the allegations contained above, as though fully set forth herein.

53. EMCC conferred a benefit on the Defendants by extending surety credit and/or issuing the Bonds on behalf of the Defendants.

54. The Defendants accepted and appreciated that benefit by profiting from their operations, which would not have been possible without the issuance of EMCC's surety credit and/or the Bonds.

55. The Defendants further accepted and appreciated that benefit by virtue of the equity in the Defendants' personal property as a direct result of these profits, which equity would not have been possible without the issuance of EMCC's surety credit and/or the Bonds.

56. The Defendants agreed to defend, indemnify, and post collateral with EMCC in exchange for and pursuant to the terms of the GAI.

57. By failing and refusing to do so, the Defendants have been and will continue to be unjustly enriched by keeping funds or other collateral to which EMCC is entitled pursuant to the GAI and/or common law.

58. It would be inequitable for the Defendants to retain the benefit of EMCC's surety credit and/or the Bonds without complying with their obligations under the GAI and/or common law to post collateral as promised to protect EMCC from losses.

59. Under these circumstances and given the surety relationship between EMCC and the Defendants, general considerations of right and justice dictate that EMCC be granted the right to have the Defendants' assets applied to their obligation to post collateral with EMCC.

## FOURTH CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance)

60. EMCC hereby incorporates by reference the allegations contained above as though fully set forth herein.

61. Pursuant to the GAI, the Defendants are required to place EMCC in sufficient funds to cover any and all losses or expenses, including attorneys' and consultant's fees and costs, incurred or to be incurred by EMCC as a result of the issuance of the Bonds.

62. There is no adequate remedy at law for EMCC to recover the benefit of the GAI.

63. By issuing the Bonds, EMCC has performed any and all obligations owed to the Defendants under the GAI and/or Bonds.

64. EMCC requests specific performance on the provisions of the GAI, which require Defendants to grant access to books and records and/or to place EMCC in sufficient funds to cover any liability or loss for which the Defendants are obligated to indemnify EMCC under the terms of the GAI.

65. Further, if the Defendants cannot place EMCC in sufficient funds, EMCC requests an equitable lien in the amount of no less than $2,679,690.11, plus additional attorneys' fees ("Lien Amount") on any real estate, equipment, fixtures, accounts, contract rights, chattel paper, instruments, documents, general intangibles, and inventory owned by any or all of the Defendants, including, but not limited to, the equipment shown in the chart attached as **Exhibit 8** and incorporated by reference herein.

66. If the Defendants do not or cannot place EMCC in sufficient funds, EMCC should also be given an equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of the Defendants in and to all items, property, documents, etc. identified in the Assignment (fourth) section of the GAI.

67. If the Defendants do not or cannot place EMCC in sufficient funds, EMCC is entitled to preliminary and permanent injunctive relief and granting EMCC a valid equitable lien, equal to the losses suffered by EMCC under the Bonds, upon all assets and real property in which any or all Defendants have an interest, such liens to remain in place until EMCC has been placed in funds, and restraining Defendants from transferring, disposing or otherwise liquidating any property owned by the Defendants, real or personal, beyond reasonable living expenses, during the pendency of this matter.

**FIFTH CLAIM FOR RELIEF**
(*Quia Timet* **Against All Defendants**)

68. EMCC hereby incorporates by reference the allegations contained above, as though fully set forth herein.

69. Under the doctrine of *quia timet*, EMCC is entitled to have Defendants place funds or other security with EMCC sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to, pre- and

13

post-judgment interest at the maximum rate permitted by law accruing from the date of NIC's claims against the Bonds, or Defendants' breach of their common law duties, or a breach of other agreements, court costs, counsel fees, costs of investigation, accounting, engineering, construction management and any other outside consulting fees from and against any and all such losses, fees, costs and expenses, which EMCC may sustain or incur by reason or consequence of having issued the Bonds.

70. Despite demand, Defendants have failed to place EMCC in such funds in direct contravention of EMCC's *quia timet* rights.

71. Pursuant to the terms of the Bonds, EMCC has guaranteed that if MK Weeden fails to take certain actions, the underlying bonded obligation will become due, and Defendants will pay the debt.

72. As a result of EMCC's exposure and liabilities under the Bonds amounting to, at least, $2,679,690.11, EMCC is entitled to collateral from Defendants in the amount of $2,679,690.11 pursuant to the doctrine of *quia timet*.

73. Unless EMCC obtains an Order compelling Defendants to collateralize EMCC and/or establish equitable liens on Defendants' property in an amount of no less than $2,679,690.11, EMCC will not be adequately secured for its payments and ongoing exposure under the Bonds.

74. If EMCC is unable to obtain an Order requiring Defendants to place EMCC in collateral as requested in EMCC's demands, EMCC will be irreparably harmed due to a lack of protection from exposure under the Bonds, as evidenced by Defendants' refusal to indemnify or collateralize EMCC for bond claims and resulting losses of no less a than $2,679,690.11.

75. EMCC is without a plain, speedy, or adequate remedy at law, as pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and EMCC will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

76. EMCC is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting EMCC a valid equitable lien, equal to the losses suffered by EMCC under the Bonds, upon all assets and real property in which any or all Defendants have an interest, such liens to remain in place until EMCC has been placed in funds, and restraining Defendants from transferring, disposing or otherwise liquidating any property owned by the Defendants, real or personal, beyond reasonable living expenses, during the pendency of this matter.

77. Upon information and belief, Defendants have equity in real and personal property, and/or have received income and/or other intangible benefits from the operation of MK Weeden as a direct result of EMCC's issuance of the Bonds or other agreements. The interests of equity and fairness dictate that such equity, income and/or other intangible benefits be converted to equitable liens until EMCC is repaid.

## IV.   JURY DEMAND

78. EMCC demands a trial by jury on all counts so triable.

## V.   CONCLUSION

WHEREFORE, for the foregoing reasons, EMCC requests judgment against the Defendants as follows and for such further relief as the Court deems proper:

- For all losses, expenses, costs and attorneys' fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by EMCC as a result of the Defendants' breach of the GAIs;

- For the Defendants to indemnify and hold EMCC harmless from and against any and all liabilities, losses and expenses of any kind of nature including, but not limited to, interest, court costs, expenses, and attorneys' fees, imposed upon, sustained or incurred by EMCC on account of the issuance of the Bonds;

- Due to the Defendants' unjust enrichment and EMCC's *quia timet* rights, EMCC requests an equitable lien (including attorneys' fees, costs, and expenses) to be placed on any real or personal property owned in whole or in part by any and all of the Defendants including, but not limited to, the property described in **Ex. 8**;

- For preliminary and permanent injunctive relief requiring Defendants to place EMCC in funds by money, property or liens or security interests in real or personal property, as determined by EMC and restraining each of the Defendants from transferring, disposing, or otherwise liquidating any property owned by Defendants, or any of them, real or personal, beyond reasonable living expenses, during the pendency of this matter; and

- For such further relief as the Court deems just and proper.

Respectfully submitted this 22nd day of August 2024.

The Hustead Law Firm
*A Professional Corporation*


*/s/Patrick Q. Hustead*
Patrick Q. Hustead, Esq.
Dane C. Mueller, Esq.
4643 South Ulster Street, Suite 1250
Denver, Colorado 80237
Telephone: (303) 721-5000
*Attorneys for Plaintiff Employers Mutual Casualty Company*
