## SETTLEMENT AGREEMENT AND COMMERCIAL SECURITY AGREEMENT

This Settlement Agreement and Commercial Security Agreement ("Agreement") is entered into as of this __ day of November, 2024 ("Effective Date"), by and between Employers Mutual Casualty Company ("Surety"), MK Weeden Construction, Inc. ("MK Weeden"), MK Equipment Co., LLC ("MK Equipment"), Weeden Construction, LLC ("Weeden Construction"), and Julie A. Weeden ("Ms. Weeden"), WMK Holdings, LLC, and Weeden Ranch, LLC. MK Weeden, MK Equipment, Weeden Construction, and Ms. Weeden shall be collectively referred to herein as the "Indemnitors". WMK Holdings, LLC, and Weeden Ranch, LLC, MK Weeden, MK Equipment, and Weeden Construction shall be collectively referred to herein as the "Liquidating Entities". Surety, Indemnitors, and Liquidating Entities are referred to collectively herein as the "Parties."

## RECITALS

WHEREAS, on or about November 16, 2020, Indemnitors executed a General Agreement of Indemnity ("GAI") in favor of the Surety, a copy of which is attached hereto as **Exhibit 1**.

WHEREAS, at the request of MK Weeden and Weeden Construction (collectively "Weeden"), Surety issued surety bonds on behalf of MK Weeden and Weeden Construction ("Bonds"), each of which guarantees performance of the contract referred to therein and payment of certain obligations of the Principal with respect to said contract, all in accordance with the terms and conditions set forth therein. All projects covered by said Bonds are referred to herein as the "Projects."

WHEREAS, Indemnitors hereby acknowledge their execution of the GAI and hereby reaffirm their joint and several obligations and liabilities to Surety thereunder.

WHEREAS, upon information and belief, the Projects have been completed, and Indemnitors hereby acknowledge and admit that: 1) certain subcontractors and suppliers of labor and/or materials with respect to the Projects have not been paid by Weeden; 2) certain subcontractors and suppliers of labor and/or materials with respect to the Projects have been paid, will be paid, or both, by the Surety; 3) certain subcontractors and suppliers of labor and/or materials with respect to the Projects have made demands to Surety to perform under the Bonds; and 4) Surety has demanded collateral from Indemnitors and others in the amount of at least $2,750,000, none of which has been paid to Surety by Indemnitors, except the perfected security interests granted by the Indemnitors herein in certain of Indemnitors' personal property .

WHEREAS, the $2,750,000 demand is based on Surety's actual and anticipated loss as a result of issuing the Bonds, including, but not limited to, payments under the Bonds, fees, costs, internal expenses, pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering, and outside counsel fees, which Surety may sustain or incur or otherwise determine to pay in its reasonable discretion. All such payments under the Bonds by the Surety and any other losses incurred by the Surety including, but not limited to, fees, costs, internal expenses, pre- and post-judgment interest at the interest rate permitted by Montana

law, court costs, counsel fees, accounting, engineering, and outside counsel fees, expenses of any kind, etc. are referred to herein as the "Surety Loss".

WHEREAS, due in part to Indemnitors' failure to post any collateral with the Surety and provide related financial information as demanded, the Surety filed suit against Indemnitors and others in the U.S. District Court for the District of Montana, Billings Division, Case No.: CV-24-112-SPW ("Lawsuit").

WHEREAS, the Liquidating Entities hereby agree to liquidate their assets in sufficient amounts to fully pay and satisfy those lenders who hold security interests in the Liquidating Entities' equipment and the Surety for amounts due, amounts that may become due, or both, under the Bonds, GAI and this Agreement as further described herein.

WHEREAS, in furtherance of the discharge of Indemnitors' duties and obligations to Surety under the GAI and the Bonds, Indemnitors, having consulted with legal counsel of their own choosing, execute this Agreement at their own free will and accord.

## **AGREEMENTS**

In consideration of the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Incorporated Recitals.** Each of the "Recitals" is incorporated into this Agreement without any difference or distinction between the two segments of the Agreement. In the event of any conflict between the two segments, the Agreements shall prevail.

2. **Payment by Indemnitors and Liquidating Entities.** The Indemnitors and Liquidating Entities hereby agree to pay to, deposit with, or deliver to the Surety, $2,750,000 (Two Million Seven Hundred Fifty Thousand Dollars) in certified funds in accordance with the terms hereof as follows:

   a. $300,000 on or before April 1, 2025;

   b. $300,000 on or before July 1, 2025;

   c. $300,000 on or before October 1, 2025;

   d. $300,000 on or before January 1, 2026;

   e. $300,000 on or before April 1, 2026; and

   f. Any remaining unpaid amounts of the Surety Loss, as calculated in the sole discretion of the Surety, on or before July 1, 2026 (the "Sale Completion Date").

The Indemnitors and Liquidating Entities specifically agree that the payments called for herein constitute a contemporaneous exchange of new value.

3. **Grant of Security Interest.** Indemnitors and Liquidating Entities hereby grant to Surety a security interest in the collateral described in the below provision (the "Collateral") to secure the Surety Loss, and Indemnitors and Liquidating Entities agree that Surety shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights and remedies that Surety may have under the GAI, in law, and/or in equity. Weeden Ranch, LLC and WMK Holdings, LLC shall only be liable to Surety to the extent of the value of the liens Weeden Ranch, LLC and WMK Holdings, LLC are providing to Surety herein. Neither Weeden Ranch, LLC nor WMK Holdings, LLC are providing a guaranty of payment required by the Indemnitors to Surety. Granting this Security Interest shall not be construed as a modification, satisfaction or cancellation of any previous security interest held by Surety, all of which interests shall remain intact in all manner.

4. **Collateral Description.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Indemnitors and Liquidating Entities are providing to Surety as security for the payment of the Surety Loss and performance of all other obligations under this Agreement and the GAI:

   a. Weeden Ranch, LLC grants a first lien position to Surety on its quarried riprap of at least 30,000 tons, which Weeden has estimated as having a value of at least $1,000,000 to $1,200,000, plus 7" minus material of at least 75,000 tons which Weeden has estimated as having a value of $750,000 to $937,500;

   b. WMK Holdings, LLC grants a fourth lien position, junior to any held by Bravera Bank, Allegiance Capital, LLC, and AFG Investments 1B, LLC, to Surety on any and all vehicles and equipment owned by WMK Holdings, Inc; and

   c. The Indemnitors have previously assigned, transferred and set over to Surety and granted Surety a security interest, and reaffirms said assignments, transfers, and set overs herein in all equipment, fixtures, accounts, contract rights, chattel paper, instruments, documents, general intangibles and inventory, whether now owned or hereafter acquired and all additions and accessions to, and all proceeds and products of, any of the foregoing; all the rights of Weeden in and growing in any manner out of, all contracts, both non-bonded and those referred to in the Bonds, or in, or growing in any manner out of the Bonds; all the rights, title and interest of Weeden in and to any machinery, equipment, plant, tools and materials which are now or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; all of the rights, title, and interest of Weeden in and to all subcontracts let or to be let in connection with any and all contracts referred to in

the Bonds, and in any and all surety bonds supporting such subcontracts; all actions, causes of action, claims and demands whatsoever which Weeden may have or acquire against any subcontractor, laborer, or materialman, or any person furnishing or agreeing to furnish or supply labor, materials, supplies, machinery, tools, or other equipment in connection with or on account of any and all contracts referred to in the Bonds, and against any surety or sureties of any subcontractor, laborer, or materialman; any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which Weeden has an interest; all rights the Indemnitors have in patents, patented processes, licenses, copyrights, trademarks, and all other intellectual property rights required for the performance of the work for which Surety issued the Bonds, and Indemnitors expressly authorize Surety to use these property rights as required in the Surety's discretion to complete the work for which Surety issued the Bonds.

**5.    Title.**  Indemnitors and Liquidating Entities represent and warrant to Surety that Indemnitors and Liquidating Entities hold good and marketable title to the Collateral. Indemnitors and Liquidating Entities shall defend Surety's rights in the Collateral against the claims and demands of any and all other persons/entities.

**6.    Inspection of Collateral.**  Surety and Surety's representatives, agents, and counsel shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**7.    Cross-Collateralization.** In addition to the GAI, this Agreement secures all of obligations, debts, and liabilities, plus interest thereon, of the Indemnitors and Liquidating Entities to Surety, as well as all claims, by Surety against Indemnitors and/or Liquidating Entities, whether now existing or hereafter arising, whether related to the GAI or this Agreement, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Indemnitors and/or Liquidating Entities may be liable individually or jointly and severally with others, whether obligated as guarantor or otherwise, , and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**8.    Perfection of Security Interest.**  Indemnitors and Liquidating Entities agree to take whatever actions are requested by Surety to perfect and continue Surety's security interest in the Collateral or any security interests previously granted to Surety at any time.  Upon request by Surety, Indemnitors and Liquidating Entities will deliver to Surety any and all of the documents evidencing or constituting the Collateral, and Indemnitors and Liquidating Entities will specifically denote Surety's interest upon any chattel paper and instruments if not delivered to Surety for possession by Surety.  This is a continuing Security Agreement and will continue in effect even though all or any part of the Surety Loss is paid in full and even though for a period of time, Indemnitor and Liquidating Entities may not be indebted to Surety.

9. **Financing Statements.** Indemnitors and Liquidating Entities authorize Surety to file UCC financing statements, or alternatively, a copy of this Agreement to perfect Surety's security interest in the Collateral. At Surety's request, Indemnitors and Liquidating Entities additionally agree to sign all other documents that are necessary to perfect, protect, and continue Surety's security interest in the Collateral. Indemnitors and Liquidating Entities will pay all filing fees, title transfer tees, and other fees and costs involved unless prohibited by law or unless Surety is required by law to pay such fees and costs. Indemnitors and Liquidating Entities irrevocably appoint Surety to execute documents necessary to transfer title if there is a default.

10. **Asset Freeze.** In consideration of the agreements set forth herein, and other good and adequate consideration, unless and until the payment set forth above is made, Indemnitors and Liquidating Entities agree not to sell, transfer, waste, encumber, or otherwise dispel or dispose of any assets, real property, or personal property other than to meet reasonable and necessary business expenses and to pay down the loans to: (i) First Bank of Montana per the February 22, 2024 Forbearance Agreement including, but not limited to, the equipment upon which First Bank of Montana has a senior lien position to Surety listed in the equipment listing spreadsheet dated October 28, 2024, a copy of which is attached hereto as **Exhibit 2**: (ii) Bravera Bank per the Promissory Note dated October 12, 2020, Change in Terms Agreement dated August 10, 2023; and (iii) Allegiance Capital, LLC, per the promissory note dated September 28, 2022; AFG Investments 1B, LLC per the promissory note dated December 13, 2022, and Bravera Bank per the Promissory Notes dated December 18, 2019, October 12, 2020. In the event of any planned or prospective transfer, sale, or disposition of any asset for a sale price less that the "Minimum Price" set out on the attached equipment listing spreadsheet (**Exhibit 2**), the Indemnitors and Liquidating Entities, through their counsel, shall notify Surety's counsel and reach an agreement as to the disposition of such asset at least ten days before the Indemnitors and/or Liquidating Entities sign a contract or make a payment in connection with the disposition of any assets and/or Collateral. Any equipment sale at a price equal to or greater than the Minimum Price set out on the attached equipment listing spreadsheet (**Exhibit 2**) may be made without further consent by the Surety, but Indemnitors and Liquidating Entities must provide notice to Surety of the sale within two days before the sale including confirmation after the sale. Under no circumstances will any contract balances owed by the owner of any Project to any or all of the Indemnitors be paid to the First Bank of Montana, Bravera Bank, Allegiance Capital, LLC, or AFG Investments 1B, LLC; pursuant to the *Pearlman Doctrine,* all such contract balances, if any exist, are the sole property of the Surety, regardless of whose possession they may be in at any time, regardless of whether they are comingled with other funds or assets.

11. **Notices to Surety.** Indemnitors and Liquidating Entities will notify, in writing, Surety's counsel, Patrick Q. Hustead and Dane C. Mueller of the Hustead Law Firm12 (or such other individuals/entities as Surety may designate from time to time) within thirty calendar days prior to any: 1) change in the names of Indemnitors and/or

---

1 The Hustead Law Firm, A Professional Corporation, 4643 S. Ulster St., Suite 1250, Denver, Colorado 80237 USA, T: 303.721.5000, www.thlf.com; pqh@thlf.com; dcm@thlf.com.

Liquidating Entities; 2) change in the assumed business names of the Indemnitors and/or Liquidating Entities; 3) change in the management and/or members of Indemnitors and/or Liquidating Entities; 4) change in the authorized signer(s); 5) change in the principal address of the Indemnitors and/or Liquidating Entities; 6) change in the state of organization for Indemnitors and/or Liquidating Entities; 7) conversion of Indemnitors and/or Liquidating entities to a new or different type of business entity; and 8) change in any and all other aspect of Indemnitors and/or Liquidating Entities that directly or indirectly relates to any and all agreements between Indemnitors/Liquidating Entities and Surety.  No change in the names of Indemnitors and/or Liquidating Entities will take effect until after Surety has received written notice of the same.

**12.**    **Equipment Sales.**  Indemnitors and Liquidating Entities will immediately commence and complete the sales of equipment, as described on the equipment listing spreadsheet (**Exhibit 2**).   Indemnitors and Liquidating Entities will complete the sales of equipment no later than the Sale Completion Date. For the time period commencing on the date of this Agreement, through June 1, 2026, the Indemnitors and Liquidating Entities shall liquidate the equipment through individually negotiated sales or sales conducted by a reputable equipment auction company to enable Indemnitors and Liquidating Entities to pay the Surety Loss in full to Surety by July 1, 2026.  Every thirty days after the Effective Date, the Indemnitors and Liquidating Entities shall provide Surety a written report, sworn under oath, identifying each item of equipment sold during the preceding thirty days including: 1) the sales price, 2) the cost of sale, 3) any necessary business expense for insurance, maintenance, or taxes paid, and 4) the name of the lienholder paid. The net remaining amount of any and all sales of any encumbered assets shall be paid to Surety within two days of receipt of collected funds following each sale.  No silence by Surety as to any failure to provide such report, or any other requirement of this Agreement or the GAI, shall be construed as a waiver of any such requirement.

**13.**    **Cooperation.**  Indemnitors and Liquidating Entities agree to reasonably cooperate with Surety in connection with giving effect to the terms of this Agreement and/or Surety's performance of its obligations or efforts related to the Projects or Bonds. Such cooperation may include, but is not necessarily limited to, providing Surety with information and documentation concerning the location and liquidation of any assets including, but not limited to, receivables, owned by Indemnitors and answering questions and making documents available to Surety and its representatives regarding the sworn financial statements of Indemnitors provided herein and any related questions regarding the financial condition of any of the Indemnitors under the GAI.  Copies of the completed commercial debtor financial statements for MK Weeden, MK Equipment, and Weeden Construction is attached hereto as **Exhibit 3**, which was provided by Indemnitors' counsel to Surety's counsel via email on October 31, 2024.  A copy of the personal financial statement for Ms. Weeden is attached hereto as **Exhibit 4** which was provided by Indemnitors' counsel to Surety's counsel via email on October 31, 2024.  A failure to provide the cooperation required by this paragraph shall constitute a material breach of this Agreement and entitle the Surety to seek injunctive relief to enforce it, with all defenses against such action by the Surety being hereby waived.

14. **Default.**  Each of the following shall constitute an "Event of Default" under this Agreement:

   a. Indemnitors and/or Liquidating Entities fail to make any payment when due under this Agreement;

   b. Indemnitors and/or Liquidating Entities fail to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement;

   c. Any warranty, representation or statement made or furnished to Surety by Indemnitors or Liquidating Entities or on behalf of Indemnitors or Liquidating entities under this Agreement that is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter; and

   d. Any other material breach of this Agreement, the GAI, or both.

The foregoing list shall not restrict or limit the Surety from citing other actions or inactions as events of default under this Agreement, and shall never be cited as evidence for any such limitation.

15. **Surety's Rights and Remedies on Default.**  If an Event of Default occurs under this Agreement, at any time thereafter, Surety shall have all the rights of a secured party under the Montana Uniform Commercial Code.  In addition, and without limitation, Surety shall be immediately authorized to file the Stipulated Motion for Confession of Judgment, attached hereto as **Exhibit 5,** in any court having jurisdiction over this matter. Indemnitors and Liquidating Entities must execute the Stipulated Motion for Confession of Judgment and return the fully executed version of it to Surety's counsel simultaneously with the delivery of this fully executed Agreement.  The heading of the document may be altered should the Surety decide to file it in a court different from that which is specified thereon.

16. **Credit Toward Obligations.**  Surety's receipt of the collateral, equipment sale proceeds, payments, and other consideration called for herein, or any additional collateral, payments, or other consideration, shall not be deemed to release, but shall only be a credit toward, Indemnitors' joint and several liability to Surety, the fact and amount of which is hereby acknowledged by Indemnitors.  Surety shall have and retain all other rights and remedies against any non-party to this Agreement.  Nothing in this Agreement is intended to waive, impede, impair, or modify Surety's rights under the GAI, the terms of which remain in full force and effect.

17. **No Future Bonds.**  Nothing contained in this Agreement shall be construed as a promise by Surety to issue bonds to Weeden, any of the indemnitors under the GAI, or any of their respective affiliated entities in the future.

18. **Release of Surety.**  Indemnitors and the Liquidating Parties, for themselves

and their heirs, executors, administrators, predecessors, successors, assigns, branches, subsidiaries, agents, servants, and all other persons, firms, corporations, associations or partnerships and any and all other parties claiming through or under Indemnitors, Liquidating Parties, or both, unequivocally and without reservation, release, acquit, and forever discharge Surety and any related underwriting company and its past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employers, employees, subsidiaries, affiliates, partners, predecessors, successors and assigns, and all other persons, firms or corporation with whom Surety has been, is now, or may hereafter be affiliated from any and all liability, actions, causes of action, claims, demands, damages, costs, loss of services, loss of properties, expenses, compensation and any and all consequential damages or injuries, based on claims sounding in statute, contract, tort or any other legal theory, or which any of them had in the past, now have, relating to, or in any way growing out of the Bonds or GAI. As of the date of execution of this Agreement, Indemnitors and the Liquidating Parties expressly warrant that they do not have and are not aware of any claim against Surety that is not released by this Agreement.

      **19.** **The Lawsuit.** Upon the complete execution of this Agreement, Surety will dismiss, without prejudice, its claims against Indemnitors in the Lawsuit. Notwithstanding anything to the contrary herein, Surety shall have and maintain any and all rights and remedies against the Indemnitors and any additional parties not signatories to this Agreement. Surety's Motion for Temporary Restraining Order shall be held in abeyance pending the Indemnitors and Liquidating Entities performance of their duties and obligations under this Agreement. The Surety reserves the right to refile its lawsuit at any time in its sole discretion.

      **20.** **Effect of Bankruptcy filing.** In the event the Indemnitors, any or all of them, file for bankruptcy within Ninety-One (91) days of Surety's receipt of all or part of the payments described herein, and if such bankruptcy filing results in Surety being required to return all or part of the payments described herein as a preference under 11 U.S.C. § 547, then the releases set forth in this Agreement shall be considered void *ab initio* as between Surety and the Indemnitor(s) filing such bankruptcy proceedings, such that Surety may treat the Agreement as rejected and having been breached prepetition pursuant to 11 U.S.C. § 365(g)(1) and assert, as a claim against the filing Indemnitor(s) and/or their bankruptcy estates, any claims against such filing Indemnitor(s) purportedly released herein (and may assert such claims based on Surety's full measure of damages incurred in connection with or otherwise available with respect to the same). The dismissal without prejudice called for in this Agreement shall not serve as a bar to Surety's assertion of claims in the Indemnitor's(s') bankruptcy proceeding as contemplated herein.

      **21.** **No Third-Party Beneficiaries.** It is expressly agreed that this Agreement is intended to be solely for the benefit of the Parties hereto and shall not create a right or benefit in favor of any person not a party hereto or in any way increase the rights of third persons or increase the obligations of any party hereto to any such third persons.

      **22.** **Entire Agreement and Successors in Interest.** This Agreement contains the entire agreement between the Parties regarding the matters set forth herein, and the

terms of this Agreement are contractual and not a mere recital.  This Agreement shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, devisees, agents, employees, officers, directors, trustees, conservators, guardians, beneficiaries, heirs, successors and assigns of each of the Parties.

      **23.**    **No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Indemnitors and/or Liquidating Entities to which Indemnitors and/or Liquidating Entities are a party.  Neither Indemnitors' nor Liquidating Entities' articles of incorporation, bylaws, or any other agreement prohibit any term or condition of this Agreement.

      **24.**    **Severability.**  If any provision of this Agreement shall be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall not be affected or impaired thereby.

      **25.**    **Headings.**  The headings of the various paragraphs contained herein are for convenience of reference only and shall not affect the meaning or construction of any of the provisions of this Agreement.

      **26.**    **Construction of Agreement.**  Except to the extent modified herein, this entire Agreement shall be construed and interpreted in accordance with the laws of the State of Montana.  Further, the language of this Agreement shall be construed as a whole, according to its intent, and not strictly for or against any of the Parties, regardless of who drafted or was primarily responsible for drafting any of the language in this Agreement.  The Parties acknowledge that they have been given the opportunity to object to, request modification of, or reject any clause or provision herein to which they do not agree.  Should any Court find any provision in this Agreement to be ambiguous, then such provision shall be determined in accordance with the Parties' express intention that this Agreement be construed in the broadest possible manner, in accordance with the Parties' express intention that all disputes contemplated herein between the Parties be forever resolved.

      **27.**    **Representation of Comprehension of Document.**  In entering into this Agreement, Indemnitors represent that they have relied upon the legal advice of their attorneys, who were the attorneys of their own choice, and that the terms of the Agreement have been completely read and explained to them by their attorneys, and that the terms are fully understood and voluntarily accepted by them, and that they have signed the Agreement as their own free act and/or pursuant to the by-laws of and on behalf of their respective companies.  The Parties have not relied upon any statements or representations made by the other party or its agents, attorneys, employees or other persons representing them in entering into this Agreement.

      **28.**    **Mistake.**  Except as set forth herein, the Parties expressly assume all risk that this Agreement was the result of any mistake of any kind, waiving all claims or defenses based upon the doctrine of mistake.

      **29.**    **Additional Documents.**  Surety shall be permitted and has the express

permission of Indemnitors and the Liquidating Parties to file and/or execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the terms of this Agreement excepting the filing of financing statements unless a security agreement is contemporaneously executed therewith.

      **30.**    **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same agreement.

      **31.**    **Effectiveness.**  This Agreement shall become effective on the date indicated above. Each of the undersigned represent and warrant that they have the full right, power, and authority to execute this Agreement on behalf of the respective Parties, individually, or both.

[Signatures Follow]

Employers Mutual Casualty Company

By: *Anna C. Frederick*

STATE OF **Iowa**         )
                          ) SS
COUNTY OF **Polk**        )

Subscribed and sworn to before me this **2nd** day of **December**, 2024, by **Anna C. Frederick** as an authorized representative of Employers Mutual Casualty Company.

Witness my hand and official seal.

My commission expires: **May 7, 2026**

*Dena Bohemann*

Notary Public

DENA BOHEMANN
Commission Number 825136
My Commission Expires
May 7, 2026

MK Weeden Construction, Inc.

By: _Monte Weeden_

STATE OF __MT__        )
                       ) SS
COUNTY OF __Fergus__   )

Subscribed and sworn to before me this __29th__ day of __November__, 2024, by __Monte Weeden__ as an authorized representative of MK Weeden Construction, Inc.

Witness my hand and official seal.

My commission expires: __11.18.2026__

_Krista Ness_
Notary Public

KRISTA NESS
Notary Public for the
State of Montana
Residing at HILGER, MT
My Commission Expires
November 18, 2026

MK Equipment Co., LLC

By: *Monts Weeden* (signature)

STATE OF __MT__ )
 ) SS
COUNTY OF __Fergus__ )

Subscribed and sworn to before me this __29th__ day of __November__, 2024, by __Monte Weeden__ as an authorized representative of MK Equipment Co., LLC.

Witness my hand and official seal.

My commission expires: __11.18.2026__

*Krista Ness* (signature)
Notary Public

KRISTA NESS
Notary Public for the
State of Montana
Residing at HILGER, MT
My Commission Expires
November 18, 2026

Weeden Construction, LLC


_Monte Weeden_
By:


STATE OF __MT__      )
                     ) SS
COUNTY OF __Fergus__ )


Subscribed and sworn to before me this __29th__ day of __November__, 2024, by __Monte Weeden__ as an authorized representative of Weeden Construction, LLC.


Witness my hand and official seal.


My commission expires: __11.18.2026__


_Krista Ness_
Notary Public

KRISTA NESS
Notary Public for the
State of Montana
Residing at HILGER, MT
My Commission Expires
November 18, 2026

MKW Holdings, LLC

By: *Monte Weeden* (signature)

STATE OF __MT__        )
                       ) SS
COUNTY OF __Fergus__   )

Subscribed and sworn to before me this 27th day of __November__, 2024, by __Monte Weeden__ as an authorized representative of WMK Holdings, LLC.

Witness my hand and official seal.

My commission expires: __11·18·2026__

*Krista Ness* (signature)
Notary Public

**KRISTA NESS**
Notary Public for the
State of Montana
Residing at HILGER, MT
My Commission Expires
November 18, 2026

Julie A. Weeden (individually)


_Julie Weeden_

Julie A. Weeden


STATE OF __MT__ )
                    ) SS
COUNTY OF __Fergus__ )


Subscribed and sworn to before me this __29th__ day of __November__, 2024, by Julie A. Weeden.


Witness my hand and official seal.


My commission expires: __11.18.2026__


_Krista Ness_
Notary Public

KRISTA NESS
Notary Public for the
State of Montana
Residing at HILGER, MT
My Commission Expires
November 18, 2026

Weeden Ranch, LLC

By: *Monte Weeden* (signature)

STATE OF   MT            )
                         ) SS
COUNTY OF  Fergus        )

Subscribed and sworn to before me this 29th day of November, 2024, by  Monte Weeden  as an authorized representative of Weeden Ranch, LLC.

Witness my hand and official seal.

My commission expires: 11.18.2026

*Krista Ness* (signature)
Notary Public

KRISTA NESS
Notary Public for the
State of Montana
Residing at HILGER, MT
My Commission Expires
November 18, 2026